Filed 11/25/20  P. v. Betancourt CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>MARIO ANGUIANO BETANCOURT,<br><br>  Defendant and Appellant. | 2d Crim. No. B299754<br>(Super. Ct. No. 2015031958)<br>(Ventura County) |

A jury convicted appellant Mario Anguiano Betancourt of forcible lewd acts on a child under age 14.  (Pen. Code § 288, subd. (b)(1).)[1]  The jury also found true the special allegation that the acts were committed using force within the meaning of section 1203.066, subdivision (a)(1).  Appellant was sentenced to a determinate term of eight years in state prison.  He also was ordered to pay fees, fines and assessments totaling $13,036.87,

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

with further restitution to the victim's compensation fund to be determined later.

Appellant contends the force he used on the victim was not enough to satisfy section 288, subdivision (b)(1)'s force requirement. Appellant relies primarily upon two Sixth Appellate District decisions, *People v. Schulz* (1992) 2 Cal.App.4th 999 (*Schulz*) and *People v. Senior* (1992) 3 Cal.App.4th 765 (*Senior*), which have been largely rejected by other Courts of Appeal. We similarly reject those decisions.

Appellant also challenges the $13,036.87 in fees, fines and assessments. He contends the matter must be remanded to allow him to present evidence of his inability to pay those costs. (See *People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1164, 1167, 1172 (*Dueñas*).) He did not object to the imposition of these fees, fines and assessments and has failed to demonstrate ineffective assistance of counsel. We affirm.

FACUAL BACKGROUND

In 2014, Nayali Diaz and her husband Francisco Gantes lived in Oxnard with their two daughters, D.D., who was 10 years old and going into the third grade, and M.D., who was an infant. Appellant, who had two young daughters, lived in the same apartment complex and had spoken to Diaz and her husband several times in the parking lot. D.D. played with other children in the complex, including appellant's children, J.B. and P.B.

On September 11, 2014, D.D. went to appellant's apartment to play. She brought her backpack to do her homework. While doing homework, appellant said he had a surprise for his daughters to show D.D. He told his daughters to stay downstairs. Appellant brought D.D. upstairs into his room and closed the window curtains.

2

Appellant sat on his bed and said to D.D., "[Y]ou're so big already. Who made you so big?" D.D. said she did not know. Appellant then said, "[D]o you wear a bra already?" D.D. said, "[Y]es." Appellant asked to see her breasts and Deanna said "no, because [she is] a girl." Appellant said that "it wasn't anything bad" and pulled up her shirt and bra. Appellant placed his hand on D.D.'s shoulder to make her sit down. Appellant then stood up and pushed D.D. onto her back. Appellant then held down both of D.D.'s shoulders such that she could not get up. Appellant then began licking and sucking on D.D.'s breasts.

D.D. knew this was not right and was scared. Appellant's legs were on D.D.'s legs and she could not move. D.D. tried to get up but appellant "didn't let [her]." Appellant then put more pressure on her. D.D. finally was able to lift her right leg to kick appellant in the abdomen. D.D. broke free and ran downstairs. D.D. went and sat next to J.B. and tried to act normal. D.D. then asked J.B. about leaving through the back door. They both got up and went to the side of the house facing the back. D.D. observed that the back door had tape on it. D.D. then told appellant she wanted to go home to get her bicycle. Appellant opened the front door and she left with J.B. and P.B.

An hour after D.D. left to go play at appellant's house, she returned home appearing upset. Diaz asked what happened and D.D. said appellant took her up to his room, touched her, laid her down on his bed and "sucked on her breasts." D.D. broke into tears as she recounted what had happened.

D.D.'s father also was present. Diaz called the police immediately, and Oxnard Police Officer David Lacara responded. D.D. initially told Officer Lacara that appellant only had touched

3

her around the waist.  D.D. then went with the officer to appellant's apartment.

D.D. said appellant's name was Carlos and referred to him as J.B.'s dad.  Upon arriving at appellant's apartment, D.D. recounted the molestation to the police officer.  She said appellant was sucking on her breasts like her "mom feeds [her] sister."  Appellant denied the allegations.

Officer Lacara interviewed J.B. and P.B. at appellant's apartment.  J.B. told Officer Lacara that she, P.B. and D.D. went upstairs and when they came down, D.D. wanted to leave, so the two girls went with her.  At D.D.'s house D.D. cried while talking to her parents.  According to J.B., her father was downstairs all the time.  J.B. denied appellant was ever alone with D.D.  P.B., however, said her father laid D.D. down and did "that" to her at the house.  According to P.B., D.D. then returned home and began crying.

On September 16, 2014, Police Officer Tenille Chacon interviewed D.D. at the police station.  D.D. reiterated what she had told Officer Lacara.  After she broke free from appellant, D.D. ran downstairs thinking she could get out of the yard through a loose board.  She found it to be taped.  Appellant followed and said he really wanted to show her something this time.  D.D. insisted on going home to get her bicycle.  Appellant let her go and she told her parents what had occurred.

A sample of appellant's buccal swab was compared to samples taken from D.D.'s breasts and chest area.  The probabilistic certainty of a DNA match was found to be in the quadrillions and billions, respectively.

4

## DISCUSSION

### *Use of Force*

Appellant contends his forcible lewd acts conviction should be reversed because of a lack of evidence that he used physical force to accomplish the acts. We disagree.

A conviction for forcible lewd acts on a child requires proof that the defendant used "force, violence, duress, menace, or fear of immediate and unlawful bodily injury" against the victim. (§ 288, subd. (b)(1).) "Force" in this context means force "'substantially different from or substantially greater than that necessary to accomplish the lewd act itself.' [Citation.]" (*People v. Soto* (2011) 51 Cal.4th 229, 242 (*Soto*); see CALCRIM No. 1111.)

We review the jury's verdict for substantial evidence. (*People v. Kipp* (2001) 26 Cal.4th 1100, 1128.) Specifically, we "review[ ] the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which [the jury] could find . . . beyond a reasonable doubt" that appellant used force against D.D. (*Id.* at p. 1128.)

In *People v. Cicero* (1984) 157 Cal.App.3d 465, disapproved on other grounds in *Soto*, *supra*, 51 Cal.5th at pp. 233, 248, fn. 12, the court determined the defendant's holding and touching of the victim's private parts in a way that made it seem like he was just playing a game satisfied the force requirement. (*Id.* at p. 484.) In contrast, *Senior* concluded there was insufficient evidence of force where the defendant pulled the victim back when she attempted to pull away from the act of oral copulation, explaining that "a modicum of holding and even restraining [could not] be regarded as substantially different or excessive

5

'force.'" (*Senior*, *supra*, 3 Cal.App.4th at p. 774.)  *Schulz* reached the same conclusion where the defendant held the screaming victim's arm while he touched her breasts and vaginal area. (*Schulz*, *supra*, 2 Cal.App.4th at p. 1003.)

In both *Senior* and *Schulz*, the discussions of the force required to sustain the forcible lewd acts convictions were dicta because the court determined there was sufficient evidence of duress to sustain the convictions.  (*Senior*, *supra*, 3 Cal.App.4th at pp. 775-776; *Schulz*, *supra*, 2 Cal.App.4th at p. 1005.)  We join the courts that have rejected this dicta regarding the amount of force required.  As *People v. Babcock* (1993) 14 Cal.App.4th 383 (*Babcock*) explained, "[u]nlike the court in *Schulz*, we do not believe that holding a victim who was trying to escape in a corner is necessarily an element of the lewd act of touching her vagina and breasts.  Unlike the court in *Senior*, we do not believe that pulling a victim back as she tried to get away is necessarily an element of oral copulation.  And, unlike the defendant in this case, we do not believe that grabbing the victims' hands and overcoming the resistance of an eight-year-old child are necessarily elements of the lewd acts . . . ."  (*Id.* at p. 388; accord *People v. Jimenez* (2019) 35 Cal.App.5th 373, 392-393 [sufficient force where defendant repeatedly tried to touch the victim despite being pushed away]; *People v. Alvarez* (2009) 178 Cal.App.4th 999, 1004-1005 (*Alvarez*) ["[A]cts of grabbing, holding[,] and restraining that occur in conjunction with . . . lewd acts" can represent the force necessary to sustain a forcible lewd acts conviction]; *People v. Bolander* (1994) 23 Cal.App.4th 155, 160-161 [same], disapproved on another ground in *Soto*, *supra*, 51 Cal.4th at p. 248, fn. 12; *People v. Neel* (1993) 19 Cal.App.4th

6

1784, 1789-1790 [same], disapproved on another ground in *Soto*, at p. 248, fn. 12.)

Here, there was sufficient evidence appellant used force against D.D. to accomplish the lewd acts. Appellant's act of placing a 10-year-old child on her back on a bed, holding her down by the shoulders and restraining her movement with his legs constituted the use of force intended to overcome her resistance. Such use of force is not necessary to the commission of lewd acts under section 288, subdivision (a). (See *Babcock*, *supra*, 14 Cal.App.4th at p. 388; *Alvarez,* 178 Cal.App.4th at pp. 1004-1005.)

*Challenge to Fees, Fines and Assessments*

Appellant contends the trial court's imposition of $13,036.87 in fees, fines and assessments without considering his ability to pay violates due process and the excessive fines clause of the Eighth Amendment. This sum includes a presentence investigation fee of $2,163 (§ 1203.1b), a $40 court security fee (§ 1465.8), a $30 criminal conviction assessment (Gov. Code, § 70373), a $503.87 criminal justice administration fee (Gov. Code, §§ 29550, 29550.1, 29550.2), a $300 sex offender registration fine (§ 290.3), a $5,000 restitution fine (§ 1202.4, subd. (b)) and another $5,000 restitution fine to the County Children's trust fund (§ 294), plus further restitution, in amounts to be determined, to D.D. and her mother through the Victim Compensation Board (§ 1202.4).

The Attorney General inexplicably fails to respond to these arguments. This omission, however, is not a concession and we are required to decide the merits. (*People v. Hill* (1992) 3 Cal.4th 959, 995, fn. 3, overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.)

7

In January 2019, *Dueñas* held that "due process of law requires [a] trial court to . . . ascertain a defendant's present ability to pay before it imposes" (1) "court facilities and court operations assessments" (under § 1465.8 and Gov. Code, § 70373, respectively), or (2) a restitution fine (under § 1202.4). (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1164, 1167, 1172.) Appellant did not object to the imposition of these costs, even though *Dueñas* was decided eight months before his sentencing hearing. Typically, a defendant who fails to object to the imposition of fines, fees and assessments at sentencing forfeits the right to challenge them on appeal. (See, e.g., *People v. Aguilar* (2015) 60 Cal.4th 862, 864; *People v. Trujillo* (2015) 60 Cal.4th 850, 853-85; *People v. McCullough* (2013) 56 Cal.4th 589, 596-597.) We conclude the issue was forfeited in this case. (*People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153 [defendant forfeited challenge to assessments and restitution fine because counsel failed to object].)

Alternatively, appellant argues his trial counsel was constitutionally ineffective for failing to raise the issue at sentencing. To prove this claim, appellant must establish that counsel's performance was deficient and that he suffered prejudice because of counsel's error. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674].) As to the first element of *Strickland*, appellant bears the burden of demonstrating by a preponderance of the evidence that his counsel's performance fell below an objective standard of reasonableness. (*In re Thomas* (2006) 37 Cal.4th 1249, 1257.) To satisfy the prejudice element, he must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been more favorable to [him], i.e., a

8

probability sufficient to undermine confidence in the outcome." (*In re Ross* (1995) 10 Cal.4th 184, 201.)

"It is particularly difficult to prevail on an appellate claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009 (*Mai*), italics omitted.)

""'Ability to pay does not necessarily require existing employment or cash on hand." [Citation.] "[I]n determining whether a defendant has the ability to pay a restitution fine, the court is not limited to considering a defendant's present ability but may consider a defendant's ability to pay in the future." [Citation.] This include[s] the defendant's ability to obtain prison wages and to earn money after his release from custody. [Citation.]' [Citations.]" (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1076, italics omitted.)

Here, no objection to the $2,163 presentence investigation fee was necessary. Section 1203.1b, subdivision (a) requires the trial court to consider the defendant's ability to pay and the payment amount before imposing that fee. The trial court found "at this stage [appellant] has the ability to pay for the cost of the presentence investigation fee, which is $2,163," and ordered him to pay that amount.

In making this finding, the trial court considered the probation report and the evidence adduced at trial. Although

9

there are statements in the probation report concerning appellant's poor financial condition, disability, health issues and inability to work, the court nonetheless found he has the ability to pay the presentence investigation fee. It stands to reason, therefore, the court would have made the same finding had there been an objection to the other fines, fees and assessments.

It also is plausible trial counsel did not object because counsel knew of other information regarding appellant's finances, which may or may not have been disclosed at trial, or decided it would be futile given the court's finding as to the presentence investigation fee. (See *People v. Thompson* (2010) 49 Cal.4th 79, 122 ["Counsel is not ineffective for failing to make frivolous or futile motions"].) In addition, counsel may have tactically focused on trying to lower the prison term rather than the fees. (See *Mai*, *supra*, 57 Cal.4th at p. 1009.)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.

We concur:


GILBERT, P. J.


YEGAN, J.

10

Benjamin F. Coats, Judge
Superior Court County of Ventura
_____

Maxine Weksler, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and John Yang, Deputy Attorney General, for Plaintiff and Respondent.